James F. Niehoff, J.
This is a CPLR article 78 proceeding *592 in which the petitioner taxpayer seeks an order requiring the Board of Assessment Review of Nassau County to direct the Board of Assessors of Nassau County to restore the Nassau County Veterans Memorial Coliseum to the Nassau County assessment roll as taxable real property.
The proceeding first came on in Special Term Part I on July 26, 1973. By order dated September 25, 1973 the Justice to whom the matter had been assigned dismissed the petition upon the ground that the petitioner was not a party aggrieved and, hence, had no standing. An appeal was taken to the Appellate Division, Second Department, and by order dated October 7, 1974 the Appellate Division reversed the order of Special Term and remitted the proceeding to Special Term "for a hearing on the issue of whether the current use of the subject municipally owned property entitles it to a tax exempt status.” (46 AD2d 651.)
Such a hearing was held before me in Special Term Part II on December 19, 1974. At that time the parties stipulated that the minutes of the hearing held by the board of assessment review in May of 1973, as supplemented by the testimony taken in court on December 19, 1974, would constitute the evidentiary basis upon which this court’s decision would rest.
The property in question, namely, the Nassau County Veterans Memorial Coliseum (hereafter Coliseum) is located in the area formerly known as Mitchell Field, described as section 44, block F, lot 143C in Uniondale Union Free School District No. 2, Town of Hempstead, County of Nassau, State of New York. In 1963 the respondent County of Nassau acquired the land from the Federal Government for public and county purposes. Prior to and subsequent to the acquisition, the land remained in a tax exempt status. Thereafter, the county constructed the Coliseum on the land for approximately $31,000,000. Operations were commenced in the Coliseum in the spring of 1972. For the tax year 1972-1973 the land and building were assessed for a total of $6,013,000 and were marked as "exempt” on the assessment roll.
On April 26, 1973 one year after the Coliseum had opened the five-man Board of Assessors of the County of Nassau by a vote of 3 to 2 adopted Resolution No. 247-1973 by which it ended the tax exempt status of the Coliseum and the land on which it is situated. The assessment for the building and the land under the building was fixed at $4,406,100.
On May 2, 1973 the county filed a protest with the respon *593 dent review board complaining that such action by the board of assessors was illegal. On May 24, 1973 the review board held a hearing to consider the county’s protest.
On July 2, 1973 the review board rendered a unanimous decision overturning the board of assessors’ determination and declaring that the Coliseum should retain tax exempt status.
Thereafter, the petitioner instituted this proceeding. Her property which is assessed at $6,550 lies within 18 taxing districts. The Coliseum lies within 17 taxing districts. The two properties are in 15 of the same districts. At the hearing held pursuant to the order of the Appellate Division it was stipulated that if the Coliseum were to lose its tax exempt status the petitioner would benefit to the extent of $35 for the tax year in question. Manifestly, other county taxpayers situated similarly to the petitioner would also receive a tax reduction. Of course, each of those more numerous county taxpayers who are not so situated would receive a tax increase to offset the aforesaid reductions.
The controlling statute is subdivision 1 of section 406 of the Real Property Tax Law which reads, in pertinent part, as follows: "Real property owned by a municipal corporation within its corporate limits held for a public use * * * shall be exempt from taxation. ” (Emphasis supplied.)
It is conceded that the Coliseum is owned by a municipal corporation, to wit, the County of Nassau and that it is located within the corporate limits of the county. The dispute results from the claim of petitioner that notwithstanding the fact that the Coliseum is publicly owned it is not being "held for a public use.”
In order to facilitate the administration of the Coliseum by the county, the Legislature added section 2206-a (L 1972, ch 882) of the County Government Law of Nassau County (L 1936, ch 879, as amd) Subdivision 1 of that section recites the fact that the Coliseum is to be the site of a wide variety of activities including athletic games, contests, spectacles, entertainment, events, trade shows and exhibitions. Subdivision 2 then declares that any contractual arrangement made by the county with respect to the use of the Coliseum "may grant to the person, firm or corporation contracting with the county, the right to use, occupy or carry on activities in, the whole or any part of such coliseum, grounds, parking areas and other facilities or the coliseum, (a) for any purpose or purposes which are of such a nature as to furnish to, or foster or *594 promote among, or provide for the benefit of, the people of the county, recreation, entertainment, amusement, education, enlightenment, cultural development or betterment, and improvement of trade and commerce, including professional, amateur and scholastic sports and athletic events, theatrical, musical or other entertainment presentations, and meetings, assemblages, conventions and exhibitions for any purpose including business or trade purposes, and other events of civic, community and general public interest and/or (b) for any business or commercial purpose incidental to the operation of such coliseum, grounds, parking areas and facilities, or to the equipment thereof.”
Subdivision 2 concludes with these words: “It is hereby declared that all of the purposes referred to in this subdivision are for the benefit of the people of the county and for the improvement of their health, welfare, recreation and prosperity, for the promotion of competitive sports for youth and prevention of juvenile delinquency, and for the improvement of trade and commerce and that such purposes are and shall continue to be deemed county and public purposes.”
Thus, the Legislature has declared that the purposes for which the Coliseum is-to be operated are public purposes and the petitioner concedes that the Coliseum is being operated by the county in accordance with the public purposes set forth in section 2206-a of the County Government Law of Nassau County. However that may be, petitioner argues that the Legislature did not include a clause in section 2206-a expressly exempting the Coliseum from taxation and that in the absence of express exemption the Coliseum is entitled to a tax exemption only if it is actually held for a public use. In this connection the petitioner maintains that an enactment of the State Legislature in which certain uses of municipal property are described as being for public purposes so as to support eminent domain, or construction or operation, is not to be considered as a conclusive determination of public use to support tax exemption. Following through on said point petitioner argues that the phrase "public purposes” as it appears in section 2206-a is not synonymous with “public use” as that term is used in the tax exemption statute, that the Coliseum is being operated by the county as a commercial venture, and, so, although it was constructed for public purposes it is not being held for a public use which would qualify it for a tax exemption.
*595 The county on its part, concedes that section 2206-a, in and of itself, confers no exemption. Its claim to exemption is predicated on its belief that the Coliseum is being held for a public use.
Counsel for the parties, as well as counsel for the Uniondale School District who has filed a memorandum as amicus curiae, are to be commended for having submitted exceptionally fine memoranda in which they have cited numerous authorities, including text books and scholarly law review articles, in support of their respective positions. However, after studying all of the material put forth, the court feels that the solution to the controversy presented herein is to be found in a careful analysis of one case — the leading tax exemption case cited by both sides — namely, Town of Harrison v County of Westchester (13 NY2d 258).
The facts in the Town of Harrison cases were these:
In 1944 the Westchester County Airport which had been constructed by the Federal Government on property purchased by the County of Westchester, was turned over to the county to be operated as a public airport. By an agreement executed in 1945, the county granted a lease to a private company for the operation of the entire airport as a public airport for the benefit of the public and the County of Westchester. Thereafter, two hangars denominated "D” and "E” were constructed by the operating corporation. The rent payable by the operating corporation to the county was increased upon completion and, in addition, the corporation agreed to pay to the county a percentage of the rentals received by it upon subleasing the hangars.
Soon after its construction, Hangar "D” was leased by the operating corporation to four companies for their private and exclusive use for periods ranging, with options, from about 10 to 15 years. These companies, in turn, sublet for varying lengths of time, all or part of their areas to other companies, virtually all of which used the space to maintain their privately owned and utilized aircraft.
Hangar "E” was leased by the operating corporation to a private company under a long-term agreement providing that the lessee or any sublessee would not use the hangar " 'for any purpose other than the storage and maintenance of private, corporate aircraft owned or operated * * * to provide transportation of its officers, employees and guests’ ”. (supra, p 261.) Thereafter, the hangar was subleased for the full period *596 to other private corporations. Pursuant to the above agreement, Hangar "E”, like Hangar "D” was used almost exclusively to house and service aircraft belonging to these several corporations.
In February of 1960 the Town of Harrison brought an action to have Hangar "E”, and the land on which it stood, declared subject to taxation. The county, by way of defense, contended that all of the hangars were used for aviation purposes necessary to the operation of the Westchester County Airport as a public airport. The county also counterclaimed seeking a judgment declaring that all the airport property within the Town of Harrison — Hangars "D” and "E” in particular and a third hangar, "B”, as well — was exempt from taxation.
In August of 1960 the Town of Harrison commenced a second action to have Hangar "D”, and the land on which it stood, declared subject to taxation. In this action, the county reiterated the defenses it had interposed in the first action.
The two actions were consolidated for trial. Following the trial the court decided (34 Misc 2d 1020), and the decision was affirmed by the Appellate Division (18 AD2d 1136), that Hangars "D” and "E”, and the land appurtenant thereto, were subject to taxation and that Hangar "B” was exempt from taxation. An appeal was taken to the Court of Appeals with respect to the tax status of Hangars "D” and "E”, only.
One of the county’s arguments for exemption from taxation was that since the Legislature has been held empowered to authorize the condemnation of property for a "public use” even though some of the property is to be leased to private parties, the same interpretation of the standard of "public use” must necessarily be applied in determining the tax status of such property. The Court of Appeals rejected that contention in these words (13 NY2d 258, 265, 266, supra):
"While the argument may have superficial appeal, it cannot withstand analysis since the two situations are completely disparate as respects both the policy considerations and the issues involved. The policy considerations which prompt or move the Legislature to authorize the acquisition and operation of a project, or to sanction condemnation to bring it into being, may be altogether different from those affecting its decision as to whether the property so acquired or operated shall be free from tax. The Legislature may quite properly conclude that hangars for private parties are essential to *597 * * * the public interest and that, unless a county or other public airport is permitted to provide such facilities, the use thereby afforded probably could not be made available or exist at all. But it by no means follows that the Legislature would conclude that the parties using the private hangars should not bear their proper share of the tax burden, that that entire burden should be thrown on the residents and other taxpayers of the town. (Cf. County of Herkimer v Village of Herkimer, 251 App Div 126, 127, affd 279 NY 560, supra.) * * * It certainly may not be assumed that the Legislature, in granting Westchester County the power to maintain this airport, intended to preclude consideration of the entirely separate and distinct question whether hangars so used should be exempt from town taxation.”
Hence, the petitioner would appear to be correct in her assertion that tax exemption does not, ipso facto, flow from the fact that the Legislature has declared that the purposes for which the Coliseum was built "are for the benefit of the people of the county” and are to be deemed "public purposes” (cf. City of Newark v Essex County Bd. of Taxation, 54 NJ 171), and that tax exemption results only if the Coliseum is actually devoted to the public use within the meaning of subdivision 1 of section 406 of the Real Property Tax Law.
What, then, are the guidelines for determining when publicly owned property is being devoted to, or held for, public use so as to qualify for tax exemption? Here, again, we may look to the Town of Harrison case for assistance. There the court wrote: "Although what comprises 'a public use’ within the meaning of the statute 'has never been defined with exactitude’ and 'must necessarily depend upon the peculiar circumstances of each case’, it has been said, and most appropriately, that 'Held for a public use, in this connection, means that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public, or by public agencies.’ (County of Herkimer v Village of Herkimer, 251 App Div 126, affd 279 NY 560).” (13 NY2d 258, 263, supra.)
Applying the foregoing standard to the facts in the Town of Harrison case the Court of Appeals said: "It follows, therefore, that those portions of the land owned by a municipality which are employed in the actual operation of an airport for the general use of its inhabitants must be deemed to be 'held for a *598 public use’ and, accordingly, exempted from taxation, [p 263] * * * there can be no doubt that the courts below were correct in denying such tax exempt status to Hangars 'D’ and 'E’ for the reason that they are not being employed for a public use. As the trial court in this case aptly noted, both hangars are occupied by private corporations, either as lessees or sublessees, 'under long-term leases which insure to them complete dominion over the premises demised to them’. The hangars were not leased, nor are they utilized, for the purpose of providing storage or maintenance area for aircraft serving the general public or for any other purpose redounding to the benefit or advantage of the general community. On the contrary, they are being devoted to servicing the private aircraft of their corporate occupants and, indeed, the occupancy of Hangar 'E’ is expressly limited by the operative leases to such a purpose. These two factors — the exclusive, long-term control of the premises by private corporations and the use of the premises by them solely for the storage and maintenance of aircraft serving only their own personnel and guests — warrant the conclusion that the hangars, and the land upon which they are located, are not 'held for a public use’, [pp 263-264] * * * In sum, then, since the subject property has been committed to the exclusive control of private parties under long-term agreements and is being employed solely for their private purposes, rather than in a manner benefiting the community at large, such property must be deemed to be held for other than 'a public use’ within the sense of the Real Property Tax Law. The two hangars here involved and the land on which they stand are, therefore, subject to taxation by the plaintiff town [p 266].”
From the foregoing it is clear that those portions of the Westchester County Airport which served the community at large (including Hangar "B”) were exempt from taxation as property held for the public use, in spite of the fact that the airport was operated by a private operating corporation, and that only Hangars "D” and "E” were subject to taxation for the reasons that they were "committed to the exclusive control of private parties under long-term agreements” and were "being employed solely for their private purposes, rather than in a manner benefiting the community at large.”
Turning now to the Nassau Coliseum:
The Coliseum is a public assembly facility with a seating capacity of approximately 16,500. As stated earlier, the Legis *599 lature has denominated as "public purposes” the objectives for which the Coliseum was built, to wit, to provide the people of Nassau County with a wide range or variety of performances in a number of areas including, but not limited to recreation, entertainment, amusement, education, enlightenment, and cultural development or betterment. By so doing the Legislature is merely acknowledging that "public projects are not confined to providing only the bare bones of municipal life, such as police protection, streets, sewer, light and water; they may provide gardens, parks, monuments, fountains, libraries, museums and 'Generally speaking anything calculated to promote the education, the recreation or the pleasure of the public’ ”. (Martin v City of Philadelphia, 420 Pa 14, 17.)
In order to implement those public purposes enumerated in section 2206-a of the County Government Law of Nassau County (L 1936, ch 879, as amd by L 1972, ch 882), the county’s management personnel, who are responsible directly to the County Executive, enter into rental agreements with interested parties for the purpose of booking various functions at the Coliseum.
Two long term contracts have been entered into, one with the Nets (a professional basketball team) and the other with the Islanders (a professional hockey team). In addition to sports events, concerts of various types are conducted varying from rock and roll to music of a more classical nature. Commercial and business shows are also held as well as antique auto auctions and shows, international photo shows, ice follies, roller derbys, trade and consumer shows, college graduations, boxing matches, organization dinners and numerous other events and exhibitions requiring the facilities of a large exhibit hall or arena.
The promoters who enter into rental agreements with the county, in turn, present their productions to the public from whom they collect admission fees. (A few events are open to the public free of charge.)
Petitioner admits that if the Coliseum were generally open to the public free of charge it would be tax exempt even though it was incidentally leased to the Nets and Islanders. Her argument against tax exemption is that by entering into numerous leases with promoters and charging an admission fee for entrance into the Coliseum the county has embarked upon a commercial venture or proprietary operation.
*600 The court does not agree that those two features of the Coliseum’s operation bar it from tax exemption.
Manifestly, the promoters are renting the Coliseum for their private purposes and they hope to make a profit from their activities. Nonetheless, it is evident that the use of the Coliseum by private promoters is not the reason for the existence of the Coliseum or the purpose behind the Coliseum but is simply incidental to or coincidental with the enjoyment and occupation of the Coliseum by the general public in attendance for whose benefit the events are shown.
Obviously, the county could not make available to its residents the many events that are brought into the Coliseum except through contracts with promoters. Equally plain is the fact that such promoters are interested in profits. But that does not mean that the Coliseum which is serving the public is being held for a private, rather than a public use.
True it is that where as with Hangars "D” and "E” of the Westchester County Airport, the publicly owned property is committed to the exclusive control of private parties and is employed solely for their purposes, such property is not held for a public use. In such situation the public is excluded from the use and enjoyment of the property and the property is taxable.
On the other hand, where as with Hangar "B” and the balance of the Westchester County Airport, the publicly owned property is operated for the benefit of the community at large and is enjoyed by the general public such property is held for the public use and is tax exempt, and any incidental benefits to the private lessees of the property would neither impair the public purposes nor remove the tax exemption. (See City of Newark v Essex County Bd. of Taxation, 54 NJ 171, supra; Walter Reade, Inc. v Dennis Twp. 36 NJ 435; see, also, Orbison v Welsh, 242 Ind 385; Matter of Carney v Ohio Turnpike Comm. 167 Ohio St 273; Visina v Freeman, 252 Minn 177.)
Certainly the county’s residents are obtaining the full benefit for which the Coliseum was intended, to wit, the ability to view a wide range of sporting, cultural, recreational and other events which might not otherwise be available to them and which are the very public purposes for which the Coliseum was authorized.
That the public is required to pay an admission charge for most of the functions brought to the Coliseum, or that private *601 entrepreneurs may make a profit from the productions they present, does not serve to stamp the Coliseum as being held for a nonpublic use. Those are noncritical considerations. What is controlling is that the county, which manages the Coliseum, only permits private interests to use the Coliseum for the general benefit of the public to whom the facilities are open. It is that fact which compels the conclusion that it is held for the public use for tax exemption purposes. Stated differently, under the holding in Town of Harrison, it is access to the facilities by the public in order to utilize or enjoy the facilities or functions therein that determines whether or not the property is held for public use.
Doubtless, when municipally owned property is used for purely private or commercial ends it is taxable (see County of Herkimer v Village of Herkimer, 251 App Div 126, affd 279 NY 560). For the reasons set forth above it cannot be said that the Coliseum is being held by Nassau County for purely private or commercial ends. Rather, it is being held for public ends with the commercial aspects of its operation being merely the means by which those ends are achieved.
In the case entitled Matter of Spectrum Arena (330 F Supp 125 [1971]) the United States District Court for the Eastern District of Pennsylvania reached the same conclusion in a case involving the Spectrum Arena in the City of Philadelphia. There the Federal court was called upon to interpret a Pennsylvania statute which provided a tax exemption for all public property "used for public purposes” (p 127). That language is similar to that of subdivision 1 of section 406 of our Real Property Tax Law Section which, as already noted, confers tax exemption upon public property "held for a public use.”
The Spectrum Arena in the City of Philadelphia was built by Spectrum Arena, Inc., a private corporation, at its sole expense, pursuant to an agreement with the city under which the city was to have title to the building and the corporation was to have a leasehold interest in the land and building. The Spectrum Arena is a multipurpose sports, entertainment and convention facility providing events almost identical to those conducted at the Coliseum. The District Court was asked to determine whether the corporation’s leasehold interest in the arena was exempt from real estate taxes because the facility was public property "used for public purposes.”
The court ruled that the corporation’s leasehold interest in *602 the arena was tax exempt "because of its use for public purposes.” (330 F Supp 126, 127, supra.) In arriving at that conclusion the court made several significant points, quoted below: "By providing the public with amusement, pleasure, and entertainment, the municipally owned Spectrum clearly is public property used for public purposes, [p 127] * * * the leasing of public facilities to private parties for operation does not negate the public purpose of the facilities', [p 129] * * * Tt is the use of the property and not the use of the proceeds from the property which determines whether tax exemption may constitutionally be granted.’ [p 130] * * * The tax exemption arises because of the use of the Spectrum for public purposes —the providing of an arena for public entertainment * * * The Spectrum serves this public purpose while under the control of the * * * Corporation, [p 130].”
It is interesting to note that in the Spectrum case the city— like the petitioner here — in arguing against tax exemption relied upon a case involving airplane hangars. In distinguishing that case the District Court wrote (p 130): "But the facts make the difference as to tax liability. For in Porter, supra, a hangar was being used for two company planes which were utilized exclusively for executives and employees of Porter. The public had no right to fly in Porter planes or to command their services. Whereas, in the Spectrum there is not merely a right of the public to view the events at the Spectrum, but the public is solicited to utilize the Spectrum’s facilities. Not one citizen of Pittsburgh had a right to board the Porter plane, while the Spectrum solicits 15,000 citizens for each event to watch a hockey match, or a basketball game or a musical session. I am not suggesting that a leasehold interest in public property is never taxable. I am merely holding that a leasehold interest in public property is tax exempt where the property is used for public purposes.”
So it is with the Town of Harrison case and the Coliseum. The public had no right to use Hangars "D” or "E” at the Westchester County Airport. Whereas, in the Coliseum there is not merely a right of the public to view the events at the Coliseum, but the public is solicited to utilize the Coliseum’s facilities.
In its decision of July 2, 1973 the board of assessment review stated (p 6): "The crux of this case is whether the Coliseum is being used and availed of in such a manner as to be considered a public use.”
*603 It then went on to say (p 7): "The agreements for use of the Coliseum given to the promotors to carry on any of the events or performances were more in the nature of a license to carry on these events rather than giving them dominion over the premises which, control the County never relinquished. The agreements at most were a mechanism to provide the public purposes set out in Section 2206-A-2 of the County Government Law.”
The board then concluded with the following findings: "1. Parcel known as Section 44, Block F, Lot 143-C, is real property owned by a municipal corporation within its corporate limits. 2. By providing the public with amusement, pleasure, entertainment, enlightenment, recreation, education, cultural development and sports and athletic events, the municipally owned Coliseum clearly is public property used for public purposes. 3. The use of the property is in furtherance of the public purposes defined and distinguished in the statute (Section 2206-A of the County Government Law of Nassau County, added by Chap 882 of the Laws of 1972, effective June 8, 1972) and is accordingly held as a public use. 4. The property complies with and is subject to Section 406 of the Real Property Tax Law and is exempt from taxation. 5. The finding of the Majority of the Board of Assessors is reversed and the property is granted tax exemption pursuant to Section 406 of the Real Property Tax Law.”
The foregoing findings are neither arbitrary nor capricious but are in accordance with the law as the court perceives it and the facts.
Therefore, the petition is dismissed, without costs.